IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 8:08CV |
| | ) | |
| vs. | ) | **VERIFIED COMPLAINT** |
| | ) | **FOR FORFEITURE** |
| $69,040.00 IN UNITED STATES CURRENCY, | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW the Plaintiff, United States of America, and for its cause of action against the Defendant, states and alleges as follows:

1. The Court has jurisdiction of this matter pursuant to Title 28, United States Code, Sections 1345, 1355 and 1395, and pursuant to Title 21, United States Code, Section 881.

2. The Defendant is $69,040.00 in United States Currency.

3. The Defendant property is now and will be during the pendency of this action in the judicial district of the State of Nebraska.

4. On or about December 20, 2007, the Defendant property was seized in Kimball County, Nebraska by deputies of the Kimball County Sheriff's Office; the property is currently held by the United States Marshals Service. Immediately after said seizure, administrative forfeiture proceedings were instituted by the United States Drug Enforcement Administration.

5. Paul Gonzalez has filed a Claim for ownership, pertaining to said Defendant property, with the United States Drug Enforcement Administration.

6. On December 20, 2007, Paul Gonzalez was in possession of the Defendant property, as proceeds traceable to the exchange of a controlled substance, or alternatively, the Defendant property was used or was intended to be used to facilitate the transportation, sale, receipt, possession, concealment or distribution of a controlled substance, as more particularly described as follows:

    a.    On December 20, 2007, at approximately 8:38 p.m., Deputy Christopher Engel, was on duty for the Kimball County Sheriff's Office as a certified Nebraska Law Enforcement Officer. He was in uniform displaying the badge of office of the Kimball County Sheriff's Office and driving a marked patrol car.

    b.    Deputy Engel was parked in the median turn around on Interstate 80 at approximately mile marker 18 running stationary radar. Deputy Engel clocked a vehicle coming up behind him on his rear radar traveling in excess of 10 miles per hour over the posted speed limit of 75 miles per hour. Deputy Engel pulled out and began to catch up to the vehicle to make a traffic stop for the speeding violation. Deputy Engel activated his emergency lights and the vehicle yielded at approximately mile marker 16 of Interstate 80 westbound. Deputy Engel made contact with the driver of the vehicle and asked the driver for his driver's license, registration and proof of insurance.

    c.    While the driver was looking for the information, Deputy Engel asked the driver where he was coming from. The driver, who was later identified by his Nevada driver's license as Paul V. Gonzalez, said Des Moines, Iowa. Deputy Engel asked Mr. Gonzalez what was going on in Iowa. Mr. Gonzalez said he

was there to see some friends and a doctor. Mr. Gonzalez then provided Deputy Engel his driver's license, registration and proof of insurance. Deputy Engel asked Mr. Gonzalez to exit the vehicle and come back to the patrol vehicle with him. Deputy Engel asked Mr. Gonzalez to have a seat in the front passenger seat of the patrol vehicle.

d. Deputy Engel began to look at the rental agreement Mr. Gonzalez presented to him. Deputy Engel found the agreement very hard to read. Deputy Engel asked Mr. Gonzalez what day he rented the vehicle from Enterprise Rent-A-Car. Mr. Gonzalez said yesterday, which would have been December 19, 2007. Deputy Engel asked Mr. Gonzalez if it was a quick trip to Iowa and back. Mr. Gonzalez said yes and then went on to say why he rented the vehicle and he was also dying of cancer and that was why he went to Iowa. Mr. Gonzalez said he received some injections in his neck from a European doctor to fight his cancer. Deputy Engel observed Mr. Gonzalez was very nervous during their conversation. He was unable to sit still and was sweating on his forehead. Deputy Engel asked Mr. Gonzalez if he was all right and he replied yes. Deputy Engel ran a check on Mr. Gonzalez's driver's license, as well as a criminal history. Dispatch informed Deputy Engel Mr. Gonzalez had a valid driver's license and was not wanted on any warrants. Dispatch informed Deputy Engel Mr. Gonzalez had a long criminal history of drug charges. Deputy Engel completed a warning citation for the speeding violation. He went over the warning with Mr. Gonzalez and informed him

3

there were no fines or points lost. The deputy asked him to slow down and drive safely.

e. Mr. Gonzalez began to exit Deputy Engel's vehicle. At that time, Deputy Engel asked Mr. Gonzalez for a few more minutes of his time. Mr. Gonzalez agreed. Deputy Engel asked Mr. Gonzalez if he was familiar with the 9-11 attacks on the United States. Mr. Gonzalez said yes. Deputy Engel told Mr. Gonzalez he would not be doing his job if he did not ask people some questions while doing his job. Deputy Engel told Mr. Gonzalez if law enforcement would have maybe asked certain people these types of questions maybe the United States could have prevented the attack from taking place. Deputy Engel asked Mr. Gonzalez if he was familiar with Interstate 80 and what types of people and objets go up and down it on a daily basis, such as drug contraband. Mr. Gonzalez said he was familiar with it and said it was a large corridor. Deputy Engel asked Mr. Gonzalez if he would have any of those items inside of his vehicle. Mr. Gonzalez said he did not. Deputy Engel asked Mr. Gonzalez if he would allow him and a state trooper to search the inside of his vehicle and his belongings for those items. Mr. Gonzalez said he would rather there be no search, but he would open up the doors and allow Deputy Engel to look inside the vehicle. Deputy Engel told Mr. Gonzalez he did not want to look, he wanted to search the vehicle. Mr. Gonzalez said he felt like he was being accused of transporting something. Deputy Engel found it out of the ordinary to have the amount of clothing and other belongings

4

inside of the vehicle to just take a trip to Iowa and only stay for a couple of hours. Deputy Engel also believed Mr. Gonzalez was very nervous throughout his contact with him. Deputy Engel told Mr. Gonzalez he was going to temporarily hold him to see if a canine unit from the Nebraska State Patrol could come and conduct an exterior sniff of the vehicle to detect the odor of narcotics.

f.   Deputy Engel contacted Dispatch and asked them to contact the Nebraska State Patrol in Scottsbluff to see if they had a canine unit available. Dispatch informed Deputy Engel Trooper Russ Lewis from Sidney, Nebraska had been contacted. He and his canine, Woody, were on their way to the scene.

g.   Deputy Engel told Mr. Gonzalez a canine unit was on its way and asked him to return to his vehicle and remain at the scene. A short time later, Dispatch contacted Deputy Engel and told him Mr. Gonzalez had a lengthy criminal history and to use caution with him. Deputy Engel then went back to Mr. Gonzalez's vehicle, told him there was no need for him to remain in his vehicle and asked him to come back and sit in the patrol unit. Mr. Gonzalez did so.

h.   Nebraska State Patrol Troopers Jackson and Woods arrived at the scene. Deputy Engel told them of the situation. Trooper Jackson asked Mr. Gonzalez if he had ever been arrested. Mr. Gonzalez responded yes. Mr. Gonzalez said it was for conspiracy in a drug related matter. Trooper Jackson

5

          asked Mr. Gonzalez if he had any large sums of U.S. currency inside of his vehicle. Mr. Gonzalez said he did not.

i.      At approximately 9:50 p.m., Trooper Lewis and his canine, Woody, arrived on scene. At approximately 9:51 p.m., Trooper Lewis deployed Woody to an exterior sniff of the vehicle. Woody indicated to the odor of narcotics on the rear of the 2007 Jeep Cherokee driven by Mr. Gonzalez. Deputy Engel told Mr. Gonzalez of the indication and advised Mr. Gonzalez that gave the law enforcement officers probable cause to search the vehicle.

j.      Troopers Jackson and Woods started to conduct a search of the vehicle. At approximately 9:52 p.m., Trooper Jackson looked inside a brown paper sack located in the rear end of the vehicle. He located a large amount of U.S. currency. Upon completion of the search, Deputy Engel told Mr. Gonzalez he and his vehicle would be transported to the State Office for further investigation.

k.     Upon arrival at the State Office, Deputy Engel took photographs of the vehicle, currency and Mr. Gonzalez. Trooper Jackson interviewed Mr. Gonzalez. Mr. Gonzalez said the money was from a silent auction held for him to fight cancer. However, Mr. Gonzalez was not able to provide any paperwork or receipts for having the money. Mr. Gonzalez said it was his money and the exact amount was $69,000.

l.      Troopers Woods and Jackson and Deputy Engel counted the currency in front of Mr. Gonzalez and found the total amount to be $69,040. Deputy Engel told

Mr. Gonzalez the money was going to be seized, but he would have until January 20, 2008, to file a claim to determine what would be done with the money. Mr. Gonzalez was read aloud a Notice of Forfeiture Property form by Trooper Jackson. Mr. Gonzalez said he understood and signed the form. Mr. Gonzalez was then able to leave.

7. By reason of the foregoing, the Defendant property was used or was intended to be used to commit or facilitate the commission of violations of Title 21, United States Code, Sections 841 and 844. The Defendant property is therefore subject to forfeiture to the United States pursuant to Title 21, United States Code, Section 881(a)(6), and no other property rights should exist in it.

WHEREFORE, the Plaintiff, United States of America, prays the Defendant property be proceeded against for forfeiture in accordance with the laws and regulations of the rules of this Court; that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed; that the Defendant property be condemned, as forfeited, to the United States of America and disposed of according to law and regulation; that the costs of this action be assessed against the Defendant property; and for such other and further relief as this Court may deem just and equitable.

UNITED STATES OF AMERICA,
Plaintiff

JOE W. STECHER
United States Attorney

By: _____
NANCY A. SVOBODA (#17429)
Assistant U.S. Attorney
1620 Dodge Street, Suite 1400
Omaha, Nebraska 68102-1506
(402) 661-3700

VERIFICATION

STATE OF NEBRASKA     )
                      ) ss.
COUNTY OF DOUGLAS     )

Pursuant to Rule C(2), Supplemental Rules for Certain Admiralty or Maritime and Asset Forfeiture Claims, Assistant United States Attorney for the District of Nebraska, Nancy A. Svoboda, being first duly sworn, deposes and states that the facts set forth herein are true and correct according to the best of her knowledge and belief.

_____
NANCY A. SVOBODA (#17429)
Assistant U.S. Attorney

Subscribed and sworn to before me this 29th day of May, 2008.



_____
Notary Public

PATRICIA A. CARMAN
MY COMMISSION EXPIRES
April 24, 2012

Pursuant to the rules of this Court, the United States of America hereby requests the trial of the above and foregoing action be held in Omaha, Nebraska, and that it be calendared accordingly.

_____
NANCY A. SVOBODA
Assistant U.S. Attorney

8